IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-470-BO

| | |
|---|---|
| HARI HARA PRASAD NALLAPATY, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| VAMSI MOHAN NALLAPATI, *et al.*, | ) ) |
| Defendants. | ) ) |

ORDER

This matter is before the court on Plaintiffs' motion to compel responses to third-party subpoenas issued to Vivid Cosmos Granite, LLC, a North Carolina LLC ("Vivid NC"); Vivid Cosmos Granite, LLC, a Texas LLC ("Vivid TX") (collectively, "the Vivid entities"); Cosmos Granite Charlotte, LLC ("Cosmos Charlotte"); Cosmos Granite Charleston, LLC ("Cosmos Charleston"); and Cosmos Granite Dallas, LLC ("Cosmos Dallas") (collectively, "the Cosmos entities"). [DE-69, -70]. The Vivid entities and the Cosmos entities have responded in opposition. [DE-74]. The court held a telephonic hearing on August 13, 2021. For the reasons set forth below, the motion to compel is allowed in part and denied in part.

## I. BACKGROUND

This case involves the winding down of a partnership between two cousins, Plaintiff Hari Hara Prasad Nallapaty ("Prasad") and Defendant Vamsi Mohan Nallapati ("Vamsi"). Compl. [DE-1] at 1. Known as "Cosmos Granite and Marble," the business sold wholesale granite and marble and was allegedly operated as a 50/50 partnership. *Id.* at 4. The alleged partnership acquired various assets, including real estate and a partial ownership interest in Vivid NC. *Id.* at

7–12. Prasad and Vamsi began discussing terminating their partnership in late 2015. *Id.* at 16. In May 2016, Vamsi used cash and materials from Vivid NC to set up a Dallas, Texas location, and he created Vivid TX as the legal entity to hold that location. *Id.* at 14. NC LLC held a 25% ownership interest in Vivid TX. *Id.*

In January 2019, Prasad and Vamsi executed a settlement agreement in which they allocated certain assets, but they have not yet separated their interests in NC LLC. *Id.* at 13. On March 1, 2020,[1] Vivid NC sold substantially all of its assets to Cosmos Charlotte, a newly formed entity, allegedly for less than fair market value. *Id.* at 23. Plaintiffs allege that the purpose of the sale was to exclude Prasad from Vivid NC. *Id.* Cosmos Charlotte subsequently spun out certain assets to another newly formed entity, Cosmos Charleston. *Id.* at 24. On December 31, 2020, Vivid TX merged into Cosmos Dallas and ceased to exist. *Id.* at 26. Collectively, the court will refer to March 1, 2020 for Vivid NC, Cosmos Charlotte, and Cosmos Charleston and December 31, 2020 for Vivid TX and Cosmos Dallas as "the transaction dates."

Prasad alleges that Vamsi refused to share financial information that would enable Prasad to value his interest in Vivid NC and Vivid TX. *Id.* at 15–16. On April 7, 2021, Plaintiffs served the subpoenas at issue here. [DE-70-2]. The Vivid entities and the Cosmos entities objected to the requests, but through meet and confer efforts, the parties were able to resolve some of the objections. [DE-70] at 2. Objections regarding production of general ledgers and QuickBooks data remain. *Id.* Plaintiffs seek an order compelling the Vivid entities and the Cosmos entities to produce documents in response to the following requests:

> 2. All general ledgers for [the third party], covering any period between January 1, 2016[2] and the present.

---

[1] The third parties' brief states that the transaction date was February 29, 2020. [DE-74] at 4. In the interest of inclusivity, the court will refer to March 1, 2020 as the transaction date for Vivid NC.

[2] The subpoena to Cosmos Charlotte requests data from January 1, 2016 to the present. The temporal scope differs among the third party subpoenas. [DE-70] at 4 n.3.

2

5. All QuickBooks data, including but not limited to cash disbursements journals, details [sic] bank reconciliation reports, general ledger details, accounts payable, accounts receivable, and audit trail reports, in native formats, for [the third party], covering any period between January 1, 2016 and the present.

[DE-70-2] at 10–11.

## II. DISCUSSION

Subpoenas issued to nonparties are governed by Fed. R. Civ. P. 45, which "adopts the standard codified in Rule 26" in determining what is discoverable. *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1); *see Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Thus, the two fundamental limits on discovery imposed by Rule 26(b)(1) are relevance and proportionality. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir.), *cert. denied*, 140 S. Ct. 672 (2019).

Rule 45 imposes further limits when discovery is sought from nonparties.[3] "A more demanding variant of the proportionality analysis [] applies when determining whether, under Rule

---

[3] The Vivid and Cosmos entities are third parties, although Plaintiffs noted there is a related case, 5:20-CV-47-D, in which Cosmos Dallas, Cosmos Charlotte, and Cosmos Charleston are counter defendants, and there is a discovery-sharing agreement between the two cases. [DE-32] at 8.

3

45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Id.* at 189 (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). This is so because "[b]ystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* Ultimately, giving the nonparty status "special weight," the court must determine "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Id.*; *Spring v. Bd. of Trustees of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at *1 (E.D.N.C. Aug. 8, 2016). When considering the propriety of enforcing a subpoena, a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(iv).

The party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted). Accordingly, it is the Vivid entities and the Cosmos entities' burden to show why discovery should be denied. *See U.S. Equal Emp't Opportunity Comm'n v. Bojangles' Rests., Inc.*, No. 5:16-CV-654-BO, 2017 WL 2889493, at *3 (E.D.N.C. July 6, 2017) (citing *Papanicolas v. Project Execution & Control Consulting, LLC*, No. CIV.A. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2015) (noting that "'[t]he burden of proving that a subpoena is oppressive is on the party moving to quash'"); *Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 612 (D.S.C.

2016) ("[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.") (citation omitted).

The Vivid entities and the Cosmos entities contend that discovery should be denied for two reasons: (1) much of the requested information is irrelevant to the valuation of Vivid NC as of March 1, 2020 and Vivid TX as of December 31, 2020 (the "transaction dates"); and (2) the burden of producing confidential, granular-level financial data that would have to be redacted outweighs any benefit to Plaintiffs and is disproportionate to the needs of the case. [DE-74] at 7–11.

## A. Relevance

At the August 13, 2021 hearing, the parties agreed that the central issue in dispute is the valuation of Vivid NC and Vivid TX as of the transaction dates. The Vivid entities and the Cosmos entities contend that financial information from after the transaction dates is irrelevant because it would have no bearing on the valuation of the entities at a fixed point in time. Plaintiffs argued at the hearing that financial information from after the transaction dates is relevant because the entities are intertwined in such a way that transactions between them were not arms-length, and if there was movement of funds or a change in the entities' performance after they were sold or merged, that information could show mismanagement and bear on the value of the companies as of the transaction dates.

First, the court finds that the financial information from *before* the transaction dates is relevant. Plaintiffs attached to their motion a declaration of Tiffany Couch, a Certified Public Accountant with the professional designations of Certified in Financial Forensics and Certified Fraud Examiner. [DE-70-1]. Ms. Couch states that the high-level documents previously produced, such as tax returns and internally prepared financial statements, have significant discrepancies. *Id.* at 2. For example, a 2016 balance sheet for Vivid TX lists more than $3 million in liabilities, but

5
Case 5:20-cv-00470-BO   Document 78   Filed 08/19/21   Page 5 of 9

Vivid TX's 2016 tax return reports no liabilities. *Id.* Ms. Couch states that examining the granular-level QuickBooks data is the only way to resolve the discrepancies and properly value the entities. *Id.* at 2–3. She states that because the entities are related, transactions between them can be conducted at less than arms' length for less than fair market value, and they are therefore considered high risk by auditors and forensic accountants. *Id.* at 3. Because the valuation of the entities as of the transaction dates is a central issue in the case, and because Ms. Couch's declaration indicates that the QuickBooks data from before the transaction dates would bear on the entities' valuation as of the transaction dates, the pre-transaction date data is relevant.

However, the Vivid entities and the Cosmos entities contend that financial information from *after* the transaction dates is not relevant to the valuation of the entities as of the transaction dates, and the court agrees. Plaintiffs argued that the data may indicate mismanagement, but Ms. Couch's declaration does not articulate a basis for requesting data from *after* the transaction dates. She opines that the data will be useful for resolving questions regarding a discrepancy between a 2016 Vivid TX balance sheet and 2016 tax return; differing amounts in capital accounts indicated on the balance sheet, presumably referring to the 2016 Vivid TX balance sheet referenced in the preceding paragraph; and an NC LLC investment balance increase of $800,000 from 2018 to 2019 with no explanation. [DE-70-1] at 1–6. Ms. Couch repeats several times in her declaration that the purpose of requesting the granular-level financial data is to make sense of the high-level documents and properly value the entities. *Id.* Plaintiffs contended at the hearing that there *may* be evidence of mismanagement or movement of funds in the post-transaction date data that would bear on the value of the companies as of the transaction dates, but that argument rests on speculation and amounts to a "fishing expedition." *See Howard v. Coll. of the Albemarle*, No. 2:15-CV-00039-D, 2016 WL 4384658, at *3 (E.D.N.C. Aug. 16, 2016) (holding that "[l]itigants

6

may not use the discovery process as a fishing expedition" and finding that requested documents were irrelevant because they related to time periods outside of the plaintiff's employment, and the plaintiff "fails to explain why this elongated timeframe in his request for production is appropriate"); *United States v. Bartko*, No. 5:09-CR-321-D, 2012 WL 13185501, at *3 (E.D.N.C. Mar. 29, 2012) (holding that "blind requests riddled with the language of discovery epitomize an impermissible fishing expedition" when the requesting party "has no idea what information" the requested files might contain but "simply hopes they will contain something useful"). Plaintiffs may find something in the pre-transaction date QuickBooks data that would support the relevancy of post-transaction date data, but for now, it appears that the QuickBooks data from after the transaction dates are not relevant, and the motion to compel that information is denied without prejudice. *Harris v. Vanderburg*, No. 4:19-CV-111-D, 2020 WL 7319607, at *5 (E.D.N.C. Dec. 11, 2020) (denying a motion to compel without prejudice, stating that the plaintiffs should narrow their requests, and recognizing that they may adduce additional information that would bear on relevancy).

**B.     Proportionality**

Having found that the pre-transaction date data is relevant, the next issue is whether the requests are proportional to the needs of the case. The third parties assert that the requests are not proportional and pose an undue burden because they would have to expend time and resources examining the data to redact confidential information. Plaintiffs respond that exporting a QuickBooks file would take mere minutes, and any confidentiality concerns could be addressed by the consent protective order already entered in this case.

The amended consent protective order entered in this case on May 26, 2021 provides as follows:

7

> A third party responding to a subpoena may designate a document, information, or thing it produces or permits inspection and copying of "CONFIDENTIAL" if such third party believes in good faith that the document, information, or thing constitutes or contains confidential business, financial, personnel, or personal information, and "ATTORNEYS' EYES ONLY" only if that party believes in good faith that the document, information, or thing constitutes or contains customer names, customer addresses, vendor names, and vendor addresses, and only if the party simultaneously produces a redacted version of the document, information, or thing marked "CONFIDENTIAL" as provided below.

[DE-66] at 3. The order further provides that "[w]ithin any such document designated 'CONFIDENTIAL,' the designating party may redact customer names, customer addresses, vendor names, and vendor addresses, provided that contemporaneously with any such designation, the designating party must also produce an unredacted copy of the document designated 'ATTORNEYS EYES ONLY.'" *Id.* at 4. The protective order gives parties a period of time in which to designate documents produced by third parties in response to a subpoena as confidential or attorneys' eyes only. *Id.*

Designating the QuickBooks documents as confidential or attorneys' eyes only and redacting information such as customer and vendor names would take some amount of time, but the third parties and Defendants have not explained with particularity how burdensome it would be, and the consent protective order entered in this case contemplates such a production. Production of the pre-transaction date data is not disproportionate to the needs of the case or unduly burdensome on the grounds that the third parties or Defendants would have to follow the procedures set forth in the consent protective order. *See Jones v. Pulte Home Corp.*, No. 5:07-CV-473-H(3), 2009 WL 10690096, at *3 (E.D.N.C. Apr. 3, 2009) ("Plaintiffs do not contest the confidentiality of the financial information they have requested. Rather, they point out that on March 20, 2008, both parties agreed to a joint protective order regarding confidential information. [DE-61, pgs. 2-3]; [DE-16-2]. This protective order sufficiently addresses Defendant's concerns.

[DE-16-2, p. 2, 5]."). The QuickBooks data for Vivid NC through March 1, 2020 and for Vivid TX through December 31, 2020 is relevant and proportional to the needs of the case, and following the procedures set forth in the consent protective order would not be unduly burdensome; accordingly, Plaintiffs' motion to compel production of the pre-transaction date data is allowed.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel [DE-69] is allowed in part and denied in part, and the third parties are ordered to produce the QuickBooks data through March 1, 2020 for Vivid NC and through December 31, 2020 for Vivid TX no later than **September 2, 2021**.

So ordered, the **19** day of August 2021.

Robert B. Jones, Jr.
United States Magistrate Judge