IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-470-BO

| | |
|---|---|
| HARI HARA PRASAD NALLAPATY, UTS HOLDINGS, LLC, and JUSTH HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> VAMSI MOHAN NALLAPATI, NALLAPATI PROPERTIES, LLC, ROHIT GANGWAL, and VINAY BHARADWAJ, <br><br> Defendants. | ORDER |

This matter comes before the court on the motion to quash, [DE-110], and motion for protective order, [DE-118], filed by Plaintiffs Hari Hara Prasad Nallapaty ("Prasad"), UTS Holdings, LLC ("UTS"), and Justh Holdings, LLC ("Justh") (collectively, "Plaintiffs"); and the motion to compel, [DE-125], filed by Defendants Vamsi M. Nallapati ("Vamsi") and Nallapati Properties, LLC ("Nallapati Properties") (collectively, "Defendants"). Defendants responded in opposition to the motion to quash, [DE-117]; Defendant Vinay Bharadwaj ("Vinay") responded in opposition to the motion for protective order, [DE-124]; and Plaintiffs responded in opposition to the motion to compel, [DE-130]. For the reasons set forth below, the motion to quash is allowed in part and denied in part, the motion for protective order is allowed in part and denied in part, and the motion to compel is denied.

## I. BACKGROUND

This case involves the winding down of a partnership between two cousins, Prasad and Vamsi. First Am. Compl. [DE-45] at 1. Known as Cosmos Granite and Marble ("NCLLC"), the business sold wholesale granite and marble and was allegedly operated as a 50/50 partnership. *Id.* at 6. The alleged partnership acquired various assets, including real estate and a partial ownership interest in Vivid NC. *Id.* at 8–9. Prasad and Vamsi began discussing terminating their partnership in late 2015. *Id.* at 16. In May 2016, Vamsi used cash and materials from Vivid NC to set up a Dallas, Texas location, and he created Vivid TX as the legal entity to hold that location. *Id.* at 13–15. NCLLC held a 25% ownership interest in Vivid TX. *Id.* at 14.

In January 2019, Prasad and Vamsi executed a settlement agreement in which they allocated certain assets, but they have not yet separated their interests in NCLLC. *Id.* at 16–17. On March 1, 2020, Vivid NC sold substantially all of its assets to Cosmos Charlotte, a newly formed entity, allegedly for less than fair market value. *Id.* at 23. Plaintiffs allege that the purpose of the sale was to exclude Prasad from Vivid NC. *Id.* Cosmos Charlotte subsequently spun out certain assets to another newly formed entity, Cosmos Charleston. *Id.* at 24. On December 31, 2020, Vivid TX merged into Cosmos Dallas and ceased to exist. *Id.* at 25–26.

Prasad alleges that Vamsi refused to share financial information that would enable Prasad to value his interest in Vivid NC and Vivid TX (collectively, the "Vivid Entities"). *Id.* at 3, 15–16, 33. Prasad alleges Vamsi has breached his fiduciary duties as a partner with Prasad in conspiring to transfer Vivid NC assets without notice to the exclusion of Prasad, selling its assets without paying fair value to NCLLC, and freezing out Prasad and Justh from Vivid TX for less than fair value. *Id.* at 27–28. Furthermore, Prasad claims Vamsi has failed to account for the

membership interests in the Vivid Entities preventing Prasad from learning the true value of his partnership share. *Id.* at 30–31.

## II. LEGAL STANDARDS

The general rule regarding the scope of discovery is found in Fed. R. Civ. P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

"Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The Federal Rules provide that the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). The party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be

denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection*, 270 F.R.D. at 240 (citation omitted).

Subpoenas issued to non-parties are governed by Fed. R. Civ. P. 45. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce a document and tangible things or to permit an inspection."). "In response to such a subpoena, a non-party may either file a motion to quash or modify the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A), move for a protective order pursuant to Fed. R. Civ. P. 26(c), or oppose a motion to compel production of the subpoenaed documents pursuant to Fed. R. Civ. P. 45(d)(2)(B)." *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 484 (D. Md. 2002)); *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 5919625, at *4 (E.D.N.C. Nov. 30, 2017).

When considering the propriety of enforcing a subpoena, a trial court should consider "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Schaaf*, 233 F.R.D. at 453 (quoting *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986)). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court "must quash or modify a subpoena that subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(iv). The court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

"In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Schaaf*, 233 F.R.D. at 453 (quoting *Indem. Ins. Co. of N. Am. v. Am. Eurocopter*

*LLC*, 227 F.R.D. 421, 426 (M.D.N.C. 2005)); *Eshelman*, 2017 WL 5919625 at *4. The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source. *See* 9A Wright & Miller, Fed. Practice & Procedure § 2463.1 (3d ed.) (collecting cases); *Spring v. Bd. of Trs. of Cape Fear Cmty. Coll.*, No. 7:15-CV-84-BO, 2016 WL 4204153, at *1 (E.D.N.C. Aug. 8, 2016). The party seeking the court's protection bears the burden of demonstrating why the subpoena should be modified or quashed. *Mainstreet Collection, Inc.*, 270 F.R.D. at 240 (citation omitted); *see U.S. Equal Emp't Opportunity Comm'n v. Bojangles' Rests., Inc.*, No. 5:16-CV-654-BO, 2017 WL 2889493, at *3 (E.D.N.C. July 6, 2017) (noting that "[t]he burden of proving that a subpoena is oppressive is on the party moving to quash") (citation omitted).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to produce or make available for inspection requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

## III. DISCUSSION

### A. Plaintiffs' Motion to Quash [DE-110]

On December 8, 2021, Plaintiffs received notice that Vamsi intended to serve a subpoena on Morris, Manning & Martin, LLP ("MMM"), a law firm that has served as Plaintiffs' counsel on a variety of matters, including matters at issue in this case. Pls.' Mem. [DE-111] at 3. Plaintiffs submitted objections to the documents requested through the subpoena, which included broad requests for communications and tax documents, and indicated they would move to quash it if Vamsi would not withdraw it. *Id.*, Ex. B [DE-111-2]. The parties stipulated to an extension of the return date to January 14, 2022, but Vamsi did not withdraw the subpoena or respond to Plaintiffs' objection letter. *Id.* at 3. Plaintiffs were informed that MMM would also serve objections to the subpoena. *Id.* On January 13, 2022, Plaintiffs filed the instant motion to quash the subpoena to MMM in its entirety. [DE-110].

The court must first determine whether Plaintiffs have standing to move to quash the subpoena directed to MMM. Generally, "a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. Jan. 4, 2005) (per curiam); *United States v. Gordon*, 247 F.R.D. 509, 509–10 (E.D.N.C. 2007). Plaintiffs contend they have standing to challenge the subpoena at issue here because (1) it was issued to their law firm and seeks documents protected by attorney-client privilege and the work-product doctrine, (2) Plaintiffs have a personal interest in the documents to be produced, specifically their tax returns, and (3) Plaintiffs' have a personal interest in securing the confidentiality of the requested business and financial information. Pls.' Mem. [DE-111] at 4–5. Defendants responded that Plaintiffs do not have standing because the subpoena explicitly seeks only non-privileged

documents, only the subpoenaed party can assert a burdensomeness objection, and the information sought is not the sort of confidential information that would give rise to standing and, in any event, such information would be protected by the Protective Order entered in this case. Defs.' Resp. [DE-117] at 3–4.

The court finds that Plaintiffs have standing to challenge the subpoena in order to assert attorney-client privilege and work-product protection where the subpoena was served on Plaintiffs' legal counsel. *See CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-CV-157-D, 2016 WL 1244998, at *5 (E.D.N.C. Mar. 23, 2016) (finding plaintiff had standing to move to quash a subpoena to its trial counsel and law firm and, alternatively finding that the court could construe the motion as one for a protective order to enable consideration on the merits). While Defendants claim they are not seeking privileged documents, Plaintiffs have a right to challenge the subpoena to ensure their protected information is not produced. Alternatively, courts within the Fourth Circuit have construed a motion to quash as one for a protective order where, as here, the moving party relied on Rule 26 in arguing issues such as relevance and overbreadth. *See Wheeler v. Virginia*, No. 7:17-CV-337, 2018 WL 10611666, at *1 (W.D. Va. Sept. 18, 2018); *CTB, Inc.*, 2016 WL 1244998, at *5; *Crawford v. Newport News Indus. Corp.*, No. 4:14-CV-130, 2016 WL 11673837, at *1 (E.D. Va. Mar. 8, 2016).

Turning to the merits, Plaintiffs assert that the subpoena should be quashed because it seeks privileged, confidential, and irrelevant documents and communications and the requests are overly broad, unduly burdensome, and not proportionate to the needs of the case. Pls.' Mem. [DE-111] at 6–11. Defendants counter that the subpoena seeks relevant information proportional to the needs of the case, the subpoena is not unduly burdensome, and confidentiality concerns do not warrant quashing the subpoena. Defs.' Resp. [DE-117] at 4–9.

The subpoena sought the following documents from MMM:

1. Any document, including communications, relating to Nallapati Properties.

2. Any document, including communications, relating to East Facilities.

3. All versions of any Schedule K-1 relating to Nallapati Properties, East Facilities, UTS, Prasad, or Justh, for tax years 2016, 2017, 2018, 2019, and 2020.

4. Any document, including communications, from the Relevant Time Period, relating to the ownership of NVM International, Nallapati Properties, NC LLC, Vivid NC, Vivid TX, and East Facilities.

5. Any document, including communications, relating to Nallapati Properties' redemption of any interest Prasad, UTS, or Justh held in Nallapati Properties.

6. Any document, including communications, relating to the transfer of real property from Nallapati Properties to UTS.

7. Any document, including communications, relating to an appraisal of real property owned by Nallapati Properties, NC LLC, UTS, or NVM International.

8. Any document, including communications, relating to the "roll up" transaction described in Paragraphs 29-33 of the Complaint.

9. Any document, including communications, relating to the valuation of the entities included in the "roll up" transaction described in Paragraphs 29-33 of the Complaint.

10. Any document, including communications, relating to the "concern" described in the May 23, 2016, email from Larkin Ellzey attached as Attachment 4 hereto.

11. Any document, including communications, relating to the "spin-off" described in Attachment 5 hereto.

12. Any document, including communications, from the Relevant Time Period, relating to the alleged partnership.

13. With respect to any Cosmos Business, all documents, including communications, relating to or referring to the reduction, write-down, or other adjustment to the value of such Cosmos Business's inventory during the Relevant Time Period.

14. With respect to any transaction in which any Plaintiff Cosmos Business combined with, merged with, purchased, or otherwise acquired any assets of

any person engaged in the Relevant Business in the United States during the Relevant Time Period, all documents, including communications, relating to or referring to each such transaction.

15. Any tax record of any Plaintiff from the time period from January 1, 2005, until the present.

16. Any document, including communications, relating to a tax record of any Plaintiff the Relevant Time Period.

17. Any tax record of any entity in which any Plaintiff held an interest, directly or indirectly, exceeding 25% during the Relevant Time Period.

18. Any tax record of any Plaintiff Cosmos Business.

19. Any document, including communications, relating to the "historical accounting review" referenced in the April 20, 2017, email from Lawrence Kunin attached as Attachment 6.

20. Any document, including communications, relating to Vivid NC or Vivid TX from the Relevant Time Period.

21. All documents that show or otherwise relate to Plaintiffs' treatment or reporting of the alleged partnership for tax, legal, or other regulatory purposes.

22. To the extent not covered by the above requests, all documents reflecting, relating to, or referencing communications relating to any of Defendants during the Relevant Time Period.

Pls.' Mem., Ex. A [DE-111-1].

Document Request Nos. 1–4, 6–7, 13–18, 20, and 22 are overly broad in that they seek information outside the relevant time period, they lack a relevant subject matter limitation, or they seek information from entities unrelated to the claims and defenses asserted in this case. For example, Document Request No. 1 seeks "[a]ny document, including communications, relating to Nallapati Properties." Pls.' Mem., Ex. A [DE-111-1] at 12.[1] This request contains no limitation on the temporal scope or the subject matter of the documents or communications sought and, thus,

---

[1] The page numbers referenced herein correspond to the CM/ECF footer where they differ from those of the internal document.

may include documents or communications that have no bearing whatsoever on the issues in this case. *See Moore v. DAN Holdings, Inc.*, No. 1:12-CV-503, 2013 WL 1833557, at *11 (M.D.N.C. Apr. 30, 2013) (noting the "obvious overbreadth" of a request for "all communications created, sent or received by [Defendant] Ziefle, [three other employees of the corporate Defendants], the Board of Directors [of the corporate Defendants] and/or any other [of] Defendant[s'] manager[s] concerning Plaintiff") (citing *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir.2008) ("[W]e agree with the district court that [the request for] . . . 'all documents . . . that refer to, mention or relate in any way to [the] [p]laintiff . . .' is overly broad . . . ."); *DeFreitas v. Tillinghast,* No. 2:12CV235JLR, 2013 WL 209277, at *3 (W.D.Wash. Jan.17, 2013) ("[The requests at issue] are not reasonably targeted or specific, and are overbroad on their face. [The] burden of producing many years worth of all communications relating to [the plaintiff] outweighs the likely benefits to [him], and the great cost required to produce all such communications . . . .")). Likewise, Document Request No. 2 seeking "[a]ny document, including communications, relating to East Facilities," Pls.' Mem., Ex. A [DE-111-1] at 12, lacks any temporal or subject matter limitations, and "East Facilities" is also broadly defined as "any and all real property at any time held by or titled in Nallapati Properties." *Id.* at 7. Document Request Nos. 13, 14, and 18, seek documents related to Cosmos Business or Plaintiff Cosmos Business, which are defined so broadly to include businesses owned by Plaintiffs that have no relation to the issues in this case. *Id.* at 7–8, 14. Document Request No. 22 seeking documents relating "to any of Defendants during the Relevant Time Period," *id.* at 14, lacks any subject matter restriction and thus is not appropriately limited to documents relevant to the claims and defenses in this case. Document

Request Nos. 3, 4, 6, 7, 15–17, and 20 are similarly deficient in that they are overly broad in one or more of these ways.[2]

The court declines to modify the overly broad requests. "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019). While in *Jordan*, the Fourth Circuit instructed that "[m]ere overbreadth . . . usually warrants modifying a subpoena to narrow its scope, not quashing it," the court found that where a substantial response had already been provided, "'quashing' the subpoena effectively narrows it by limiting it to what has already been produced," and "[a] subpoena may be so sweepingly overbroad . . . that it should be quashed in its entirety." *Id.* at 190 n.4. Here, many of the subpoenaed documents were previously requested from Plaintiffs and, although Defendants contend Plaintiffs' refused to cooperate in discovery, Defendants could have filed a motion to compel (and did so with respect to certain documents, [DE-108]) rather than serving overly broad requests on a non-party. *See* Fed. R. Civ. P. 26(b)(2)(C) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Accordingly, the subpoena is quashed as to Document Request Nos. 1–4, 6–7, 13–18, 20, and 22.

With respect to Document Request Nos. 5, 8–12, 19, and 21, the court finds them to be within the scope of discovery pursuant to Fed. R. Civ. P. 26(b). The court rejects Plaintiffs' argument regarding confidentiality and finds that the Protective Order entered in this case sufficiently addresses any confidentiality concerns. The court also finds that the narrowed

---

[2] The court also notes with respect to Document Request Nos. 3 and 15–17, that Vamsi and Nallapati Properties previously sought "[a]ll tax records of or relating to either of Plaintiffs," [DE-111-3], which was the subject of a motion to compel that the court addressed in an April 7, 2022 order. [DE-172]. Thus, the issue of tax records has been resolved, and non-parties need not be burdened with making a duplicative production.

11

subpoenas will not impose an undue burden on MMM and notes that MMM has not filed its own motion to quash alleging undue burden or expense. With respect to Plaintiffs' privilege objection, MMM need not produce documents protected by the attorney-client privilege or the work-product doctrine but must produce a privilege log in accordance with Fed. R. Civ. P. 45(e)(2)(A). Accordingly, the motion to quash is allowed in part and denied in part, and Defendants shall serve a copy of this order on MMM, which shall have thirty (30) days from the date of service to produce documents in compliance with this order.

### B. Plaintiffs' Motion for Protective Order [DE-118]

On January 6, 2022, Plaintiffs received notice that Vinay intended to serve subpoenas on Plante Moran, PSLZ, and Radiant (collectively, the "respondents"), Plaintiffs' accountants and non-parties to this action. Pls.' Mem. [DE-119] at 3. After service of the subpoenas seeking a wide array of financial documents and communications, each of the three respondents served written objections to the subpoenas, and Plaintiffs requested that Vinay withdraw the subpoenas but he did not do so. *Id.*, Exs. 1–6 [DE-119-2 through -119-7]. On February 28, 2022, Plaintiffs filed the instant motion for protective order. [DE-118].

Although, as discussed above, a party generally lacks standing to challenge a subpoena issued to a nonparty, *Idema*, 118 F. App'x at 744, where the challenging party has moved for a protective order, the court is permitted to consider its position on the merits. *See Artis v. Murphy-Brown LLC*, No. 7:14-CV-237-BR, 2018 WL 3352639, at *2 (E.D.N.C. July 9, 2018) (citing *EEOC v. Bojangles Restaurants, Inc.*, No. 5:16-CV-654, 2017 WL 2889493, at *4 (E.D.N.C. July 6, 2017)).

Turning to the merits, Plaintiffs assert that the subpoenas seek irrelevant and confidential documents and communications, are overly broad, and harass non-parties for documents available

from Plaintiffs. Pls.' Mem. [DE-119] at 5–10. Vinay counters that the subpoena seeks information relevant to testing Plaintiffs' damages claim, confidentiality concerns do not warrant a protective order, and Plaintiffs cannot raise objections that belong to respondents. Def.'s Resp. [DE-124] at 5–10.

The subpoenas sought the following documents from respondents:

1. Any document, including communications, relating to Nallapati Properties.

2. All versions of any Schedule K-1 relating to Nallapati Properties, East Facilities, UTS, Prasad, or Justh, for tax years 2016, 2017, 2018, 2019, and 2020.

3. Any document, including communications, from January 1, 2014 to the present, relating to the ownership of NVM International, Nallapati Properties, NC LLC, and East Facilities.

4. Any tax record of any Plaintiff from the time period from January 1, 2005, until the present.

5. Any tax record of any entity in which any Plaintiff held an interest, directly or indirectly, exceeding 25% during the Relevant Time Period.

6. Any financial statement for any entity in which any Plaintiff held an interest, directly or indirectly, exceeding 25% during the Relevant Time Period.

7. Any document, including communications, relating to Vivid NC or Vivid TX from the Relevant Time Period.

8. Any document, including communications, relating to the "separat[ion of] interests" described in Paragraphs 55-59 of the Complaint.

9. Any document, including communications, from the Relevant Time Period, relating to the alleged partnership.

10. All documents that show or otherwise relate to Plaintiffs' treatment or reporting of the alleged partnership for tax or other regulatory purposes.

11. All documents, including communications, relating to or referring to the valuation or reduction, write-down, or other adjustment to the value of the inventory of Justh, UTS, or any Plaintiff Cosmos Business during the Relevant Time Period.

12. All documents, including communications, relating to or referring to the valuation or reduction, write-down, or other adjustment to the value of the inventory of any person engaged in the Relevant Business during the Relevant Time Period.

13. All documents, including communications, relating to or referring to the appraisal or valuation of Justh, UTS, any Plaintiff Cosmos Business, or any person engaged in the Relevant Business during the Relevant Time Period.

14. With respect to any transaction in which Justh, UTS, or any Plaintiff Cosmos Business combined with, merged with, purchased, or otherwise acquired any assets of any Person engaged in the Relevant Business in the United States during the Relevant Time Period, all documents, including communications, relating to or referring to each such transaction.

15. To the extent not covered by the above requests, all documents reflecting, relating to, or referencing communications regarding any of Defendants.

Ex. 1 [DE-119-2] at 13–14, Ex. 2 [DE-119-3] at 13–14, Ex. 3 [DE-119-4] at 13–14.

Document Request Nos. 1–7 and 11–15 are overly broad in that they seek information outside the relevant time period, they lack a relevant subject matter limitation, or they seek information from entities unrelated to the claims and defenses asserted in this case. In fact, many of these document requests mirror those in the subpoena to MMM and are likewise deficient for the reasons stated above. These requests also seek tax records that were requested from Plaintiffs and the subject of a motion to compel and April 7, 2022 order, [DE-172], and the court finds no good cause to burden the respondent non-parties with a duplicative production. Vinay's argument that the financial information sought regarding Plaintiffs' unrelated entities would undercut Plaintiffs' arguments regarding the accounting method used by the Vivid Entities is not persuasive because the issue here is valuation of the alleged partnership interest for the purpose of accounting to Prasad upon dissolution of the partnership, which was not an issue with the unrelated entities owned by Prasad. Vinay also contends the Vivid Entities used the inventory method requested by Prasad, Def.'s Mem. [DE-124] at 5, but it is not apparent why Vinay needs financial records of unrelated entities to demonstrate what Prasad controlled regarding the Vivid Entities. As

explained above, the court declines to modify the overly broad requests to non-parties under the circumstances, where Vinay has had ample opportunity to obtain relevant discovery from Plaintiffs and the relevant entities. Accordingly, the protective order is allowed as to Document Request Nos. 1–7 and 11–15.

With respect to Document Request Nos. 8–10, the court finds them to be within the scope of discovery pursuant to Fed. R. Civ. P. 26(b). The court rejects Plaintiffs' argument regarding confidentiality and finds that the Protective Order entered in this case sufficiently addresses any confidentiality concerns. Accordingly, the motion for protective order is allowed in part and denied in part, and Vinay shall serve a copy of this order on respondents, which shall have thirty (30) days from the date of service to produce documents in compliance with this order.

## C. Defendants' Motion to Compel [DE-125]

In December 2021, Defendants served a third set of interrogatories and requests for production of documents on Plaintiffs. The discovery requests sought, in relevant part, information related to the inventory valuation and tax benefit from adjustment to inventory valuation for certain businesses of Plaintiffs and persons engaged in certain businesses of Plaintiffs. Defs.' Mem. [DE-126] at 2; Ex. A [DE-126-1] at 11, 15. Plaintiffs objected that these requests were irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case, but still produced some responsive inventory-related documents. Pls.' Resp. [DE-130] at 3–4; Ex. B [DE-130-3]. On February 15, 2022, Defendants filed the instant motion to compel. [DE-125].

In dispute are Interrogatory Nos. 16 and 18 and Document Request Nos. 49 and 50.[3]

---

[3] Defendants' motion also lists Document Request No. 48, [DE-125] at 1, but it is not addressed in the memorandum, [DE-126] at 4–9, and so the court declines to address it.

15

Interrogatories

16. With respect to each and every Plaintiff Cosmos Business, state whether, during the Relevant Time Period, such Plaintiff Cosmos Business reduced, wrote-down, or otherwise adjusted the value of its inventory on its business, financial, or tax records, and, if so, describe, for each year during the Relevant Time Period, how such Plaintiff Cosmos Business reduced, wrote-down, or otherwise adjusted the value of its inventory on any of its business, financial, or tax records. Your descriptions of how each such Plaintiff Cosmos Business reduced, wrote-down, or otherwise adjusted the value of its inventory should include, without limitation, the amount of each reduction, write-down, or other adjustment to the value of the inventory.

18. For each and every tax year during the Relevant Time Period, identify each tax benefit (including but not limited to exclusions, deductions, credits, offsets, or losses) inuring to the benefit of any Plaintiff, directly or indirectly, as a result of the reduction, write down, or other adjustment to the value of the inventory of any Cosmos Business during the Relevant Time Period and state where and how such tax benefit was calculated and reported on such Plaintiffs' federal and state tax returns.

Document Requests

49. With respect to each and every Plaintiff Cosmos Business, any and all documents, including communications, relating to or referring to the reduction, write-down, or other adjustment to the value of such Plaintiff Cosmos Business's inventory during the Relevant Time Period.

50. Any and all documents, including communications, relating to or referring to the reduction, write-down, or other adjustment to the value of the inventory of any person engaged in the Relevant Business.

Defs.' Mem., Ex. A [DE-126-1] at 11, 15.

Defendants seek this information "to show that the Vivid Entities' inventory valuations, and in particular their inventory write-downs, are consistent with industry practice and with the approach requested and used by Prasad during the time period where Vamsi was aware of Prasad's inventory valuation practices." Defs.' Mem. [DE-126] at 4. Interrogatory Nos. 16 and 18 and Document Request No. 49 seek this information for every "Plaintiff Cosmos Business" or "any Cosmos Business," and Document Request No. 50 seeks information for "any person engages in

the Relevant Business." Defs.' Mem., Ex. A [DE-126-1] at 11, 15. "Cosmos Business" is defined as "each person (as defined) conducting any Relevant Business under a trade name or business name that contains in whole or part the word COSMOS." *Id.* at 9. "Plaintiff Cosmos Business" is defined as "any Cosmos Business presently or previously owned or operated, in whole or part, formally or informally, directly or indirectly, by any Plaintiff. For avoidance of doubt, Plaintiff Cosmos Businesses include but are not limited to Cosmos South East, Cosmos Southwest, and Cosmos West." *Id.* at 10. A "Relevant Business" is, in a nutshell, defined as "the importation and sale [of] natural and engineered stone." Defs.' Mem. [DE-126] at 4.

As explained above, the court finds the inventory accounting methods of Plaintiffs' unrelated Cosmos or Relevant Businesses are irrelevant to the valuation of Prasad's alleged partnership interest in Vivid NC and Vivid TX. Likewise, any tax benefit from inventory write downs Plaintiffs received from unrelated Cosmos or Relevant Businesses is irrelevant to the claims and defenses at issue in this case. Plaintiffs indicate they "have already produced all the responsive documents Prasad has about the Vivid Entities, and he has no information about the New Cosmos Entities . . . ."[4] Furthermore, the Fourth Declaration of Tiffany Couch regarding her expert report refutes Defendants' assertion that she relied on information from unrelated Plaintiff Cosmos and Relevant Businesses in formulating her opinions, Fourth Couch Decl. [DE-130-2], and Defendants already have the specific documents they cite from the report, Pls.' Mem. [DE-130] at 8. Accordingly, the court finds the inventory-related requests regarding inventory methods of Plaintiffs' unrelated businesses are irrelevant to the claims and defenses in this case, and the motion to compel is denied.

---

[4] The "New Cosmos Entities" are Cosmos Charlotte, Cosmos Dallas, and Cosmos Granite Charleston, LLC. Pls.' Mem. [DE-130] at 2 n.1.

## IV. CONCLUSION

For the foregoing reasons, the motion to quash is allowed in part and denied in part, the motion for protective order is allowed in part and denied in part, and the motion to compel is denied. The production of documents ordered herein shall be made within thirty (30) days of service of this order on the subpoenaed entities.

So ordered, the 12th day of May, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge